IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST, | § § § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | Civil Action No. 7:20-cv-00161-O-BP |
| FREDNA O. HAMILTON, | | |
| Defendant. | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff's Motion for Final Summary Judgment (ECF No. 24) with supporting brief and appendix. ECF Nos. 25-26. Because there are no genuine disputes of material fact, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Motion, except as it relates to the applicable post-judgment interest rate.

**I.   BACKGROUND**

Bank of New York Mellon ("BNYM") sues Fredna Hamilton for defaulting on a home equity conversion loan agreement. ECF No. 1. In 2005, Hamilton signed an Adjustable Rate Note ("Note"), under which she would receive loan advances totaling $85,500.00 in exchange for her promise to repay the advances received plus interest. ECF No. 26-1, Ex. A-1. To secure her promise, she signed separately an Adjustable Rate Home Equity Conversion Deed of Trust ("Deed of Trust"), which created a priority lien on her home. *Id.*, Ex. A-2 ¶¶ 22-23. The undersigned references the Note and Deed of Trust collectively as the "Loan Agreement."

Hamilton's home—real property located at 4331 Rhea Road, Wichita Falls, TX 76308, and more particularly described in the pleadings (the "Property")—is held in trust pending the Note's satisfaction. *See id.* at p.16. The Property lien is subject to "foreclosure under a power of sale" if Hamilton defaults under the Loan Agreement. *Id.* ¶ 22. The lien "may be foreclosed only by court order, if the foreclosure is for a ground other than those described in Paragraph 9(a)" of the Deed of Trust. *Id.*

At issue here is ¶ 9(b), which requires Hamilton to occupy the Home as her principal residence for the Loan Agreement's term. *See also id.* ¶ 4. Around 2019, Hamilton allegedly stopped occupying the Property with $61,848.25 owed on the Note. ECF No. 1 at 2, 4. She has not resumed occupancy or paid off the debt, which has since increased to $73,274.59 as of February 2022. ECF No. 25 at 8, 11.

BNYM is, via assignment, the Note's owner and holder, and the Deed of Trust's beneficiary. *Id.* at 12-14. BNYM asserts Hamilton's default and requests a declaration of its rights to enforce the Deed of Trust's foreclosure provision to recover the outstanding debt plus costs and fees. ECF No. 1 at 6. Although Hamilton received service of process in November 2021 (ECF No. 16), she has not responded to BNYM's Complaint or the instant Motion, or otherwise filed any pleadings. *See* ECF Nos. 1-28. BNYM previously filed motions for default judgment against Hamilton (ECF Nos. 8, 17), which the Court denied. ECF No. 21. BNYM now files the Motion for Summary Judgment. ECF No. 24.

## II.    LEGAL STANDARDS

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fact disputes are genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). When a movant carries his initial burden, the burden shifts to the nonmovant to show summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court considers the full record including the pleadings, depositions, interrogatory answers, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. ANALYSIS

#### A. The Court has jurisdiction.

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted). The Court must have two kinds of jurisdiction—subject matter and personal—before it can enter a valid judgment. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82 (2017) ("A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case."). The Court has personal jurisdiction over Hamilton, a Texas citizen, because she received service of process. *See* ECF No. 16; *United States v. Fritz*, 608

F. App'x 259, 260 (5th Cir. 2015) (citing Fed. R. Civ. P. 4(k)). As to subject-matter jurisdiction, BNYM invokes the diversity of citizenship statute, 28 U.S.C. § 1332. ECF No. 1 at 2.

Section 1332 supplies the Court with "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *See* § 1332(a)(1). The parties here are citizens of different states because Hamilton is a Texas citizen and BNYM is a national association that maintains its principal place of business in New York. ECF No. 1 at 1-2; *see also Bank of N.Y. Mellon Tr. Co. Nat'l Ass'n v. Meachum*, No. 3:20-cv-2250-L-BN, 2021 WL 2879186, at *4 (N.D. Tex. Apr. 20, 2021) ("BNYM is a national banking association that is chartered and has its main office in New York, so BNYM is a citizen of New York for diversity purposes."), *rec. adopted*, 2021 WL 2677859 (N.D. Tex. June 30, 2021), *aff'd*, No. 21-10766, 2022 WL 1171059 (5th Cir. Apr. 20, 2022).

The amount in controversy is the outstanding debt under the Loan Agreement. *Bank of N.Y. Mellon v. Maniscalco*, No. 1:15-cv-35, 2015 WL 11111369, at *2 (E.D. Tex. May 11, 2015) (citing *Farmer's Bank of Alexandria v. Hoof*, 32 U.S. 167, 170 (1833)) ("Here, the Plaintiff-bank filed suit against Defendant-homeowners, seeking to foreclose on a lien to recover the debt owed under the Note. In such a case, the object of the litigation is the recovery of the sums owed under the note."). And because the Loan Agreement further entitles BNYM to recover reasonable attorney's fees, *see* ECF No. 26-1, Ex. A-1 ¶ 7(C), Ex. A-2 ¶¶ 21-22, such fees are included in the calculation. *See Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981) (stating "although attorney's fees are generally not included" in the amount-in-controversy calculation, "attorney's fees should be included where they are provided for by contract or statute").

BNYM's Complaint alleged Hamilton's debt was $61,848.25 and that BNYM's attorney's fees would exceed $15,000 through trial, thus surpassing the jurisdictional threshold. ECF No. 1 at 2. There is no indication BNYM alleged this fact in bad faith. *Nat'l Collegiate Student Loan Tr. 2006-3 v. Richards*, No. 3:16-cv-1936-M, 2016 WL 4533216, at *2 (N.D. Tex. Aug. 30, 2016) ("Where a plaintiff alleges a sum certain in its pleading, that amount controls, if made in good faith."); *see also, e.g.*, *Deutsche Bank Tr. Co. Ams. v. Comstock*, No. 3:16-cv-3210-G-BH, 2018 WL 910456, at *3 (N.D. Tex. Jan. 24, 2018) (finding amount in controversy satisfied where plaintiff-bank alleged "$63,167.46, plus estimated attorney's fees in the amount of $12,000.00"), *rec. adopted*, 2018 WL 888906 (N.D. Tex. Feb. 14, 2018).

Further, the "party invoking federal subject matter jurisdiction must present a justiciable case or controversy." *See Martinez v. Strong*, No. 3:22-cv-673-X-BH, 2022 WL 1446823, at *2 (N.D. Tex. Mar. 24, 2022), *rec. adopted*, 2022 WL 1443781 (N.D. Tex. May 6, 2022). "Justiciability in the declaratory judgment context is typically an issue of ripeness, that is, whether an actual controversy exists such that the court has subject matter jurisdiction." *Fed. Nat'l Mortg. Ass'n v. K.O. Realty, Inc.*, No. 3:13-cv-2781-L, 2014 WL 3900619, at *8 (N.D. Tex. Aug. 8, 2014) (citing *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895-96 (5th Cir. 2000)).

"A federal court may not issue a declaratory judgment unless there exists an 'actual controversy,' i.e., there must be a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests." *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir.1986). By contrast, a "court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Wolfe*, 212 F.3d at 895 (quoting *New Orleans Pub. Serv., Inc. v. Council of New* Orleans, 833 F.2d 583, 586-87 (5th Cir.1987)). This case is ripe. There is a substantial controversy of sufficient immediacy because Hamilton is in default under

the Loan Agreement, with the amount in controversy discussed above. ECF No. 1. BNYM and Hamilton also have adverse legal interests because BNYM seeks a declaratory judgment entitling it to foreclose on Hamilton's home. *Id.*

Justiciability also requires the plaintiff have standing to sue. *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (stating that "standing and ripeness are essential components of federal subject-matter jurisdiction"). Accordingly, BNYM must show injury, traceability, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also BroadStar Wind Sys. Grp. Liab. Co. v. Stephens*, 459 F. App'x 351, 356 (5th Cir. 2012) (referencing *Lujan*) ("Standing to seek declaratory judgment is subject to these same requirements."). It does. BNYM's injury includes the outstanding debt owed under the defaulted Loan Agreement, which injury is traceable to Hamilton, the defaulting borrower. *See* ECF No. 1. Under the Loan Agreement and Texas law, BNYM's injury is redressable only via a court order authorizing BNYM to foreclose. *See* ECF No. 26-1, Ex. A-2 ¶ 22 (referencing Tex. Const. art. XVI, § 50(a)(7)); *see also U.S. Bank Nat'l Ass'n v. Mondragon*, No. 3:18-cv-3126-L, 2020 WL 3605939, at *2 (N.D. Tex. July 1, 2020) ("Home equity loans in Texas must be foreclosed judicially."). BNYM also is the proper party to enforce the Loan Agreement, as discussed later. A justiciable case or controversy thus exists for the Court's review.

It follows the Court has both subject-matter and personal jurisdiction, and the Court may enter judgment if BNYM further shows there are no genuine disputes of material fact such that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### B.     There are no genuine disputes of material fact.

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). Here,

Texas law applies because the Court is in Texas, *see Lockwood Corp. v. Black*, 669 F.2d 324, 327 (5th Cir. 1982) (stating "federal courts must apply the substantive law of the forum state in diversity of citizenship actions"), and because the Loan Agreement indicates the governing law is "Federal law and the law of the jurisdiction in which the Property is located," with the Property here being in Texas. ECF No. 26-1, Ex. A-2 ¶ 18; *see Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004) ("In Texas, contractual choice-of-law provisions are typically enforced.").

Generally for liens against homestead property, to "foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (3) [borrower is] in default under the note and security instrument; and (4) [borrower] received notice of default and acceleration." *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013) (citing Tex. Prop. Code. Ann. § 51.002), *aff'd*, 583 F. App'x 306 (5th Cir. 2014). "Plaintiff must also demonstrate that it is the proper party to foreclose." *U.S. Bank Nat'l Ass'n v. Johnson*, No. 1:15-cv-788-RP, 2017 WL 598499, at *2 (W.D. Tex. Feb. 14, 2017). As Hamilton has not responded to BNYM's Motion, the following factual findings are undisputed. *See Thomas v. Ocwen Loan Servicing, LLC*, No. 3:12-cv-447-L, 2013 WL 30653, at *3 (N.D. Tex. Jan. 3, 2013) (stating the court "is permitted to accept the movant's facts as undisputed when no response or opposition is filed" to a summary judgment motion).

### 1. A debt exists.

Appended to the Motion is the Declaration of Talya Lopez, a contract management coordinator for BNYM's loan-servicing provider. ECF No. 26-1, Ex. A [hereinafter Lopez Decl.]. Lopez declares under penalty of perjury that she has personal knowledge of all facts to which she declares and that she is familiar with the exhibits attached to BNYM's Motion. *Id.* ¶¶ 1, 3; *see*

*also* Fed. R. Civ. P. 56(c)(4). Lopez avers the following: Hamilton executed the Loan Agreement in the principal amount of $85,500.00; Exhibits A-1 and A-2 are true and correct copies of the Loan Agreement's Note and Deed of Trust, respectively; and Exhibit A-9 is a true and correct copy of Hamilton's payoff statement, which shows Hamilton owing $73,274.59 under the Loan Agreement as of February 25, 2022. Lopez Decl. ¶¶ 4-5, 15.

The just-referenced Note and Deed of Trust contain signatures that are purportedly Hamilton's, further evidencing her assent to the Loan Agreement's terms, including that she would receive a maximum principal of $85,500.00 in loan advances in exchange for her secured promise to repay the principal plus interest accruing at 5.4000% annually. ECF No. 26-1, Exs. A-1 to A-2; *see also Gallagher v. Vokey*, 860 F. App'x 354, 358 (quoting *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 666 (Tex. App.—Dallas 2012, pet. denied)) ("Texas courts have consistently held that 'a party's signature on a written contract is strong evidence that the party unconditionally assented to its terms.'"). Consequently, a debt exists.

### 2. The debt is secured.

Hamilton's debt is secured under Texas Constitution, art. XVI, § 50, with the Deed of Trust indicating:

> It is the express intention of [BNYM] and [Hamilton] that [BNYM] shall have a fully enforceable lien on the Property. It is also the express intention of [BNYM] and [Hamilton] that [BNYM's] default remedies shall include the most expeditious means of foreclosure available by applicable law, including, without limitation, foreclosure under a power of sale. . . . [BNYM] shall follow any rules of civil procedure promulgated by the Texas Supreme Court related to the foreclosure of liens under Section 50(a)(7), Article XVI of the Texas Constitution, if applicable.

ECF No. 26-1, Ex. A-2 ¶ 22; *see Johnson*, 2017 WL 598499, at *3 (finding a properly secured debt where defendants executed a "[deed of trust], which secured payment of the Note with a lien on the Property"). The Deed of Trust "was recorded in the official public records of Wichita County, Texas" in September 2005. Lopez Decl. ¶ 6; *see Huston*, 988 F. Supp. 2d at 740 (noting

8

where the security instrument was filed). And although Hamilton's debt is secured by a lien created under § 50(a)(7) ("reverse mortgage") instead of § 50(a)(6), there is no indication this changes the analysis under the second *Huston* element or Texas law. *See Washington-Jarmon v. Onewest Bank, FSB*, 513 S.W.3d 103, 105 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Since 1998, the Texas Constitution has expressly authorized a reverse mortgage as a type of debt that may be secured by a valid lien against homestead property."). All other § 50(a)(7) requirements appear met and are otherwise undisputed or inapplicable. *See* ECF No. 26-1, Ex. A-2; Tex. Const. art. XVI, § 50(k) (defining reverse mortgage requirements).

### 3. Hamilton defaulted.

The Loan Agreement provisions indicating Hamilton's default are ¶¶ 9(b) and 21 in the Deed of Trust. *See* ECF No. 26-1, Ex. A-2. Paragraph twenty-one authorizes foreclosure via the power of sale if BNYM "requires immediate payment in full under Paragraph 9," which provides:

> **Due and Payable with Secretary Approval.** [BNYM] may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary [of Housing and Urban Development], if: (i) [Hamilton] cease[s] occupying the Property for 12 consecutive months without the prior written approval of [BNYM.]

*Id.* ¶ 9(b)(i); *see also id.*, Ex. A-1 ¶ 1 (defining "Secretary"). Lopez declares Hamilton "has failed to occupy the Property." Lopez Decl. ¶ 11. In November 2019, "BNYM obtained approval from Novad Management Consulting, the servicer for [the Department of Housing and Urban Development], to accelerate the debt." *Id.* (citing ECF No. 26-1, Ex. A-5). Exhibit A-5 further reflects (by omission) that Hamilton "has been out of the property for 12 months and is not scheduled to return." ECF No. 26-1, Ex. A-5. Consequently, there is evidence of Hamilton's default.

### 4. Hamilton received notice of default and acceleration.

Texas law requires Hamilton receive "written notice by certified mail stating that the note is in default and providing at least 20 days to cure before any notice of sale can be given." *Huston*, 988 F. Supp. 2d at 741 (citing Tex. Prop. Code Ann. § 51.002(d)); *see also* Tex. Const. art. XVI, § 50(k)(10) (incorporating § 50(a)(6) pre-foreclosure notice requirements). Hamilton received such notice twice via certified mail, once in November 2019 and again in September 2020. Lopez Decl. ¶¶ 12-13 (citing ECF No. 26-1, Ex. A-6 ("Notice of Default"), Ex. A-7 ("Notice of Acceleration of Loan Maturity")). Yet, "[n]othing was paid after the Notice of Acceleration." *Id.* ¶ 14.

### 5. BNYM is the proper party to foreclose.

BNYM is the secured and thus proper party to enforce the Loan Agreement because BNYM, via assignment, owns and holds the Note and is the Deed of Trust's beneficiary. *Id.* ¶¶ 7-9 (citing Exs. A-3 to A-4); *see Johnson*, 2017 WL 598499, at *3-5.

### 6. Conclusion

Because Hamilton has not responded to BNYM's Motion, there are no genuinely disputed material facts. *See Thomas*, 2013 WL 30653, at *3. The undersigned notes, however, BNYM's apparent reference to Hamilton as "Decedent" in its Motion's supportive brief. *See* ECF No. 25 at 10. If Hamilton is in-fact deceased, then that would explain her non-response, and it could affect the above analysis, so BNYM immediately should notify the Court of this fact if true. But the undersigned construes the reference as a typographical error because BNYM does not elsewhere refer to Hamilton as being deceased (*see id.* at 1-16), and the server's affidavit indicates Hamilton physically received in-person service of process. *See* ECF No. 16. Accordingly, summary judgment remains proper, and BNYM is entitled to a declaratory judgment authorizing foreclosure.

### C. Upon foreclosure, BNYM may recover its debt, costs, and fees.

BNYM requests a declaratory judgment that the Loan Agreement secures the outstanding Note balance, attorney's fees, court costs, pre-judgment interest, and post-judgment interest. *See* ECF No. 1 at 6; ECF No. 25 at 14-15. This request is consistent with the Loan Agreement (*see* ECF No. 26-1, Ex. A-1 ¶¶ 2, 7(C) & Ex. A-2 ¶¶ 21-22) and applicable legal authorities. *See Huston*, 988 F. Supp. 2d at 741 ("[W]hile the mortgagor is not personally liable for attorneys' fees, the mortgagee may recover its attorneys' fees, if permitted under the relevant contract, against the mortgaged property after a foreclosure sale."); *see also, e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Blackerby*, No. 1:17-cv-00132-RP, 2017 WL 8811742, at *4 (W.D. Tex. Dec. 28, 2017) (ordering "that the following are secured by the Security Instrument on the Property: the outstanding balance of the debt; prejudgment interest; post-judgment interest; and court costs"), *rec. adopted sub nom. Deutsche Bank Nat'l Tr. Co. as Tr. for Ameriquest Mortg. Sec., Inc., Asset-Backed Pass-Through Certificates 2002-3 v. Blackerby*, 2018 WL 8578437 (W.D. Tex. Feb. 26, 2018).

Accordingly, BNYM may recover these items against the Property upon foreclosure. *See Huston*, 988 F. Supp. 2d at 742 ("In foreclosing its lien, [movant] is entitled to apply the proceeds from the sale of the property against not only principal and accrued, unpaid interest, but also against the attorneys' fees and costs . . . that it has incurred."). Pre-judgment interest should accrue at the Loan Agreement rate, here, 5.4000%. *See* ECF No. 26-1, Ex. A-1 ¶¶ 2, 7(C); *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 435 (5th Cir. 2003) ("Prejudgment interest is governed by Texas law, and [Plaintiff] is entitled to the rate specified in the contract."). Post-judgment interest, however, should accrue at the federal rate under 28 U.S.C. § 1961.

Citing Texas Finance Code § 304.002 and Note ¶¶ 2, 7(C), BNYM submits the post-judgment interest rate should mirror the Loan Agreement rate. *See* ECF No. 25 at 15. But the Texas Finance Code does not govern post-judgment interest in this federal diversity action. *See Bos. Old*

11

*Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) ("Under 28 U.S.C. § 1961(a), in diversity cases, post-judgment interest is calculated at the federal rate, while pre-judgment interest is calculated under state law."); *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 623 (5th Cir. 1988) (stating "postjudgment interest is better characterized as procedural because it confers no right in and of itself" and "merely follows and operates on the substance of determined rights").

Paragraphs 2 or 7(C) could be availing, as the "parties are free to provide a higher rate by contract." *Campbell Harrison & Dagley v. Hill*, No. 3:10-cv-2269-L-BK, 2017 WL 5649604, at *2 (N.D. Tex. Jan. 27, 2017). But to "override [28 U.S.C. § 1961], the contract must expressly refer to postjudgment interest." *Id.*; *see also Celtic Marine Corp. v. James C. Just. Cos.*, 593 F. App'x 300, 305 (5th Cir. 2014) (quoting *Tricon Energy, Ltd., v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 458-59 (5th Cir. 2013)) ("A contract can validly establish a different rate, but it 'must do so using clear, unambiguous, and unequivocal language, otherwise the contract merely merges into the judgment.'"). Paragraph 2 provides:

> Interest will be charged on unpaid principal at the rate of FIVE AND 400/1000 percent (5.4000%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. At the end of each month, accrued interest shall be added to and made part of the principal balance as a Loan Advance and shall likewise thereafter bear interest.

ECF No. 26-1, Ex. A-1 ¶ 2; *see also id.* ¶ 5 (not referencing post-judgment interest). Paragraph 7(C) in turn provides:

> [T]he debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

*Id.* ¶ 7(C). Because these provisions do not reference post-judgment interest, they do not override the federal statutory rate, which remains applicable. *See Hill*, 2017 WL 5649604, at *2

(determining contract provision overrode the federal rate where it referenced "*before and after judgment*").

## IV.   CONCLUSION

There are no genuine disputes of material fact, and BNYM is entitled to judgment as a matter of law. The undersigned thus **RECOMMENDS** that Judge O'Connor **GRANT** the Motion (ECF No. 24), except as to the post-judgment interest rate issue. The undersigned also reviewed BNYM's proposed declaratory judgment (*see* ECF No. 24-1) and finds it generally consistent with the applicable legal authorities. The proposal does not, however, apply the federal post-judgment interest rate. Nor does the proposal reference BNYM's attorney's fees, and the record reflects BNYM has not offered proof of attorney's fees. Accordingly, the undersigned further **RECOMMENDS** Judge O'Connor enter BNYM's proposed judgment, but order that BNYM recover its attorney's fees in an amount to be determined by subsequent motion and order, *see* Fed. R. Civ. P. 54(d)(2), and that post-judgment interest accrue at the rate set by 28 U.S.C. § 1961.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except

upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on July 15, 2022.

*[signature]*
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE